# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MARTHA JOSEFINA LOPEZ,

        Plaintiff,               Civil Action No. 17-cv-10261

        v.                     Magistrate Judge Mona K. Majzoub

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

_____/

## OPINION AND ORDER
## GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [17] AND
## DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [18]

Under 42 U.S.C. § 405(g), Plaintiff Martha Lopez seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits. (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 17) and Defendant's Motion for Summary Judgment (docket no. 18). With consent of the parties, this case has been referred to the undersigned for final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Docket no. 16.) The Court has reviewed the pleadings and dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

## I.     PROCEDURAL HISTORY

On January 31, 2012, Plaintiff applied for disability insurance benefits and supplemental security income, alleging that she had been disabled since January 4, 2012. (TR 93.) The Social Security Administration initially denied Plaintiff's claims, and that finding was upheld in an Unfavorable Decision dated May 17, 2013. (TR 108.) On August 7, 2014, the Appeals Council

remanded the case for "further evaluation of the medical opinion evidence" and "further consideration to the claimant's maximum residual functional capacity during the entire period at issue. (TR 127-28.) On March 12, 2015, Plaintiff appeared with a representative and testified at a hearing before Administrative Law Judge (ALJ) Ena Weathers. (TR 33-59.) On April 16, 2015, the ALJ issued an unfavorable decision on Plaintiff's claims. (TR 12-24.) Plaintiff requested a review of the ALJ's decision with the Appeals Council, which was denied on December 1, 2016. (TR 1.) On January 26, 2017, Plaintiff commenced this action for judicial review, and the parties filed cross motions for summary judgment, which are currently before the Court. (Docket no. 17; docket no. 18.)

## II.       HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff sets forth a brief procedural history of this matter as well as a short summary of the relevant medical records. (Docket no. 17, pp. 10-14.) Defendant (docket no. 18, pp. 5-9.) and the ALJ (TR 16-22) also summarized Plaintiff's medical records. Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this opinion.

## III.      ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ determined that Plaintiff did not engage in substantial gainful activity since January 4, 2012, the alleged onset date. (TR 15.) In addition, the ALJ found that Plaintiff had the following severe impairments: "carpal tunnel syndrome, type-2 diabetes, diabetic neuropathy, osteoarthritis of the right knee, lumbar spine pain disorder, [and] depressive

disorder." (*Id*.) Nevertheless, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id*.) In addition, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined by 20 CFR 404.1567(b) with the following exceptions:

- Unable to climb ladders, ropes or scaffolds.

- Can occasionally stoop, crouch, crawl and climb ramps and stairs.

- Can perform handling and fine fingering on a frequent (not constant) basis.

- Requires simple, routine, non-tandem work tasks without strict production demands.

- Limited to only occasional interaction with coworkers and the general public.

- Can only occasionally push and pull bilaterally.

- Requires the ability to change from a standing to a seated position (or vice-versa) for 1-2 minutes every hour to two hours, without interference in work product.

- Should avoid concentrated exposure to hazards including moving machinery, work at unprotected heights, and commercial driving.

(TR 16-17.) On the basis of this determination, the ALJ posed a hypothetical to the Vocational Expert ("VE"), who testified that Plaintiff is capable of performing occupations that exist in significant numbers in the national economy, including hand packager, small products assembler, and visual inspector and/or checker. (TR 23.) Consequently, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from the alleged onset date through the date of the decision. (TR 24.)

## IV.    LAW AND ANALYSIS

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining

whether his findings are supported by substantial evidence and whether he employed the proper

legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127

F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a

preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*,

305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try

cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard*

*v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745

F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the

administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524,

536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is

supported by substantial evidence, it must be affirmed, even if the reviewing court would decide

the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if

substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388,

389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting

that the substantial evidence standard "presupposes that there is a zone of choice within which

the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's

failure to follow agency rules and regulations denotes a lack of substantial evidence, even where

the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc.*

*Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir.

2011)).

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [Plaintiff's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

Plaintiff contends that the ALJ erred by concluding that she had the RFC to perform light work. In particular, Plaintiff asserts that the record contains no substantial evidence to support the ALJ's determination that Plaintiff could frequently lift ten pounds or more. (Docket no. 17, p. 15.)

In determining that Plaintiff had the RFC to perform light work, the ALJ relied primarily on: (1) the medical opinion statement of Dr. Bina Shaw (TR 384), and (2) the assessment of the state agency medical consultant, Dr. Muhammad Mian (TR 100). (TR 18-19.)

Dr. Shaw examined Plaintiff on March 29, 2012. The ALJ emphasized Dr. Shaw's opinion that Plaintiff had "5/5 handgrip strength bilaterally" and could "lift at least 10 pounds of weight without difficulty." (TR 18.) The ALJ recognized that Dr. Shaw's opinion was ambiguous regarding whether Plaintiff could lift ten pounds frequently, as opposed to occasionally. (TR 19.) This ambiguity notwithstanding, the ALJ determined that Dr. Shaw's clinical examination "failed to produce signs or symptoms consistent with a severely restrictive musculoskeletal disorder," and was "consistent with 'light' exertional activity." (*Id.*) The ALJ gave Dr. Shaw's opinion "considerable weight." (*Id.*)

Dr. Mian performed a review of Plaintiff's medical records through April 11, 2012 and concluded that Plaintiff could occasionally lift twenty pounds and frequently lift ten pounds. (TR 100.) The ALJ acknowledged that Dr. Mian issued his opinion "nearly three years prior to [Plaintiff's] disability hearing." Nevertheless, the ALJ gave substantial weight to Dr. Mian's assessment because "the exertional limitations proposed therein are consistent with the totality of medical evidence received since [the date of Dr. Mian's assessment]." (TR 19.)

Plaintiff contends that the ALJ erred by relying on these opinions, and by giving inadequate weight to the medical source statements of Dr. Peggy Richardson (TR 448) and Dr. Jerome Sitner (TR 561). (Docket no. 17, p. 11.) Both Dr. Richarson and Dr. Sitner opined that Plaintiff was limited to lifting less than ten pounds due to bilateral carpal tunnel syndrome. (*Id.*)

In addressing these assessments, the ALJ gave "little weight" to Dr. Richardson's opinion and "very little weight" to Dr. Sitner's opinion. (TR 20-21.) The ALJ reasoned that Dr.

Richardson's analysis not reliable because "there are [*sic*] no clinical or objective evidence to support of [*sic*] the exertional and postural limitations she proposes." (TR 20.) The ALJ also cast doubt upon the "depth" of Plaintiff's treating relationship with Dr. Richardson, noting that "there is no record of [Plaintiff] returning to Dr. Richardson after May 16, 2014." (*Id.*) With respect to Dr. Sitner, the ALJ similarly concluded that "there are no diagnostic or clinical findings suggesting that [Plaintiff's] . . . medically determinable impairments, either individually or in combination, warrant the extreme degree of exertional and postural limitations he proposes." (TR 21.)

Review of Plaintiff's medical records demonstrates that the ALJ gave insufficient weight to Dr. Richardson's and Dr. Sitner's opinions that Plaintiff's carpal tunnel syndrome precluded her from lifting ten pounds.

First, both Dr. Richardson and Dr. Sitner expressly attributed Plaintiff's lifting restriction to her carpal tunnel syndrome, which the ALJ found to be among Plaintiff's severe impairments. Dr. Richardson observed that because of Plaintiff's carpal tunnel syndrome and diabetic neuropathy, "[h]er hands are often weak and the feeling is diminished, so lifting & carrying is [*sic*] difficult." (TR 448.) Similarly, Dr. Sitner noted that Plaintiff's "grip strength is diminished b/l" and that "lifting & carrying is [*sic*] very difficult." (TR 561.) These findings are consistent with the clinical observations of other physicians that treated Plaintiff during the relevant period. For example, Plaintiff complained of hand and/or wrist pain over the course of four visits with Dr. Scott Stryd from June through October of 2012. (TR 422, 424, 433, 435.) In addition, on April 29, 2013, Plaintiff was treated by Dr. Julie Levin for complaints of pain in her right wrist. An examination showed that Plaintiff had "[d]ecreased active [range of motion] to right hand/wrist due to pain" and that Plaintiff tested positive for "Tinel's Sign" on her right wrist.

(TR 454.)  The attending nurse observed that Plaintiff had "weak grip due to c/o pain."  (TR 456.)

Moreover, the ALJ's reliance on the opinions of Dr. Shaw and Dr. Mian is problematic because those analyses predate the onset of Plaintiff's carpal tunnel syndrome.  In April of 2013, Dr. Levin noted that Plaintiff's right hand/wrist pain "began 1 year ago."  Accordingly, Dr. Shaw and Dr. Mian had no opportunity to consider the effect of Plaintiff's carpal tunnel syndrome on her lifting/carrying ability.

As addressed above, the record in this matter undermines the ALJ's reasons for discrediting the opinions of Dr. Richardson and Dr. Sitner, and the RFC is not supported by substantial evidence.

Plaintiff requests that the Court award benefits instead of remanding this matter for additional proceedings.  (Docket no. 17, p. 18.)  In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking.  *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).  Plaintiff asserts that an award of benefits is appropriate in this case because "a 10 pound lifting restriction . . . would have limited Plaintiff to sedentary work and thus entitle her to benefits under the applicable grid rule(s)."  (Docket no. 17, p. 7.)  Importantly, however, the regulations contemplate that a claimant's RFC may fall somewhere in between light work and sedentary work.  *Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2*, SSR 83-12 (S.S.A. 1983).  In particular, if a claimant's exertional level "falls between two rules which direct opposite conclusions" (in this case, light work and sedentary work), the ALJ should consider the following:

a. An exertional capacity that is only slightly reduced in terms of the regulatory criteria could indicate a sufficient remaining occupational base to satisfy the minimal requirements for a finding of "Not disabled."

b. On the other hand, if the exertional capacity is significantly reduced in terms of the regularity definition, it could indicate little more than the occupational base for the lower rule and could justify finding of "Disabled."

c. In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, [vocational specialist] assistance is advisable for these types of cases.

*Id.* Accordingly, even accepting Dr. Richardson's and Dr. Sitner's opinion that Plaintiff is limited to lifting less than ten pounds, ALJ could determine that Plaintiff is not capable of performing the full range of Light Work, but has capacity beyond the standards that define Sedentary Work. For this reason, remand for further proceedings is appropriate in this case.

In addition, even assuming that Plaintiff is disabled because of her carpal tunnel syndrome, remand would be appropriate to determine the "established onset date" of Plaintiff's disability because Plaintiff's carpal tunnel syndrome arose after her alleged onset date. *See Titles II and XVI: Onset of Disability*, SSR 83-20 (S.S.A. 1980).

## V.    CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [17] is **GRANTED**, and Defendant's Motion for Summary Judgment [18] is **DENIED**. This matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a proper assessment of Plaintiff's RFC in light of the opinions of Dr. Richardson and Dr. Sitner.


Dated: January 29, 2018          **s/ Mona K. Majzoub**
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Opinion and Order was served upon counsel of record on this date.

Dated: January 29, 2018          s/ Leanne Hosking
                                 Case Manager